WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-82-00116-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Sammie Bicenti Chee, | |
| Defendant. | |

Pending before the Court is Defendant Sammie Bicenti Chee's Motion for Compassionate Release. (Doc. 64). The motion is fully briefed (Doc. 67; Doc. 72), and the Court now rules.

**I.      BACKGROUND**

The Court previously discussed the facts that led to Chee's present incarceration:

> During the early morning hours of March 10, 1982, [Chee] attacked his aunt, Cora McCabe, 71; his niece, [the underage victim], 14; and Elsie McCabe, 75 in the Granado-area residence in which they all resided.
>
> [Chee] had previously been sentenced in the United States District Court on October 29, 1974 to ten years imprisonment for voluntary manslaughter and was mandatorily released from prison on June 12, 1980, with a supervision date of January 13, 1984. Upon release, [Chee] lived with his aunt, Cora McCabe, and herded sheep for her. At approximately 3:00 a.m. on March 10, 1982, [the underage victim] was sleeping when she felt something hit her on the head. She awoke and saw [Chee] standing beside her bed. [The underage victim] recalled that [Chee] then went toward his own bed. [The underage victim] stated that Cora McCabe was lying on her bed and appeared to be sleeping. [The underage victim] further stated that [Chee] then hit Cora with a double-bladed

axe and then hit [the underage victim] twice on the top of the head. [The underage victim] screamed and [Chee] ran out of the house. [The underage victim] and Elsie locked the door after [Chee] ran outside. They tried to arouse Cora and noticed blood on her head. Elsie stated that she had been awakened by [the underage victim's] screaming. When Elsie and [the underage victim] tried to move Cora, she would only moan. Elsie then built a fire in the stove so they could see.

[The underage victim] peered out the window and saw a fire near the sheep corral. While trying to clean the blood from her own head, [the underage victim] observed [Chee] walking toward the house carrying a small can. He then set the house on fire. Thereafter, Elsie opened the front door and [Chee] threw fuel on Elsie which ignited. Elsie fell to the bed and [the underage victim] extinguished the fire with a blanket. [Chee], who had entered the house, then grabbed the double-bladed axe and threw it under the bed.

Elsie and [the underage victim] then ran out of the house and tried to extinguish the residential fire. [Chee] also ran out of the house and grabbed [the underage victim] as she tried to stop the fire. [Chee] had also grabbed a shovel and tried to use it to hit [the underage victim] in the head. [Chee] then dragged [the underage victim] to nearby trees and forced to her to commit fellatio and then violently raped [the] 14-year-old [underage victim]. [Chee] told [the underage victim] that he wanted to kill Elsie and Cora and keep [the underage victim] and have a baby with her. [The underage victim] and [Chee] subsequently returned to the burning house and dragged the mattress upon which Cora was lying outside. Cora was bleeding from the head. [Chee] then re-entered the burning house and [the underage victim] ran away. Elsie had already fled to a neighbor's house. Shortly thereafter, . . . [the underage victim's] father, arrived and found the house completely burned to the ground and Cora's body on fire. [Chee] had already fled the scene.

According to the New Mexico medical investigator, Cora McCabe died of cranial cerebral injuries caused by trauma to the head. She also suffered third degree burns over 90% of her body and first and second degree burns over the remaining 10% of her body. Elsie McCabe suffered serious burns to her face, upper chest, and upper left arm. [The underage victim] suffered a fractured clavicle and two skull fractures, one of which was a depressed fracture which was corrected by surgery. The Federal Bureau of Investigation ("FBI") arrested [Chee] later that morning.

On March 22, 1982, a federal grand jury in the District of Arizona indicted [Chee] charging him as follows: Count I - First Degree Murder of Cora McCabe; Count II - Assault of [the underage victim] with an axe with intent to Murder; Count III - assault of [the underage victim] resulting in serious bodily injury; Count IV - Forcible Rape of [the underage victim]; Count V - Assault of Elsie McCabe with intent to Murder;

> Count VI - Assault of Elsie McCabe resulting in serious bodily injury; and Count VII - Arson of an Occupied Dwelling.
>
> . . .
>
> On September 7, 1982, [Chee] pleaded guilty to second degree murder, a lessor included offense of Count I, First Degree Murder. On October 4, 1982, the District Court sentenced [Chee] to no less than thirty nor more then 90 years imprisonment pursuant to 18 U.S.C. § 4205(b)(l) which would restrict the parole commission's ability to parole him in ten years. [Chee]'s sentence was imposed following discussion between defense counsel and the court as to whether [Chee]'s sentence was pursuant to 4205(b)(l) or 4205(b)(2). The court recommended the [Chee] not be paroled.

(Doc. 42; *see also* Doc. 51 (adopting Doc. 42)).

Chee has been incarcerated for this offense for over 38 years and now moves for compassionate release. (Doc. 64). Chee is 83 years old and has high cholesterol, high triglicerides, and high glucose. (Doc. 66 at 90). He also has a history of tuberculosis, several ocular issues that negatively impact his vision, and Chee asserts that his bloodwork "seems to indicate that he is diabetic." (Doc. 64 at 1–2). Chee argues that given his advanced age, medical conditions, and the conditions in the prison, he is at an increased risk of contracting COVID-19 and suffering serious medical consequences, including death. (*Id.* at 15–18).

## II.   LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Compassionate release is an exception to this general rule, allowing a court to reduce a term of imprisonment if a defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1). "Section 3582(c) previously provided for compassionate release only upon motion of the [Bureau of Prisons (BOP)] Director." *United States v. Partida*, No. CR 17-08260-001-PCT-DGC, 2020 WL 3050705, at *1 (D. Ariz. June 8, 2020). Now, after the enactment of the First Step Act of 2018, a defendant may bring such a motion under § 3582(c) after first exhausting administrative remedies with the BOP. *See id.* at *2; *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *1 (D. Ariz. June 27, 2019).

For a court to grant compassionate release it must find that "extraordinary and compelling reasons warrant" a reduction in sentence "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The policy statements issued by the Sentencing Commission require a defendant to show that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) lists factors for a court to consider including the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the defendant, and the danger that the defendant would pose to the community. *See* 18 U.S.C. § 3142(g). "A defendant bears the burden of demonstrating that he poses no danger to the community upon release." *United States v. Magana-Lopez*, No. CR-11-04200-001-TUC-RCC (JR), 2020 WL 6827766, at *4 (D. Ariz. Nov. 20, 2020).

Finally, 18 U.S.C. § 3582(c) also requires a court to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" when analyzing a motion for compassionate release. The § 3553(a) factors include:

> [T]he nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims.

*United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (citing 18 U.S.C. § 3553(a)). A court must find both an extraordinary and compelling reason for compassionate release and that the § 3553(a) factors warrant compassionate release. *See Magana-Lopez*, 2020 WL 3574604, at *2–5 (considering extraordinary and compelling reasons and § 3553(a) factors separately); *United States v. Platt*, No. CR 18-195-WJM, 2020 WL 3839847, at *3 (D. Colo. July 8, 2020) (same).

## III. DISCUSSION

### A. Administrative Exhaustion

Here, Chee and the government agree that Chee met 18 U.S.C. § 3582(c)(1)(A)'s administrative exhaustion requirements by requesting a sentence reduction with the prison, which the warden subsequently denied. (Doc. 53 at 2; Doc. 64 at 11–12; Doc. 67 at 5).

### B. Extraordinary and Compelling Circumstances

Regarding extraordinary and compelling circumstances, Chee and the government disagree as to the severity of Chee's current medical condition. Chee argues that his age and medical condition make him highly susceptible to serious medical consequences should he contract COVID-19. (Doc. 64 at 15–18). The government argues that Chee's age on its own does not constitute an extraordinary and compelling circumstance establishing eligibility for release, and Chee does not have any comorbidities that make him particularly vulnerable to death from COVID-19. (Doc. 67 at 7–10). The Court, however, need not resolve this disagreement. Even assuming Chee has shown extraordinary and compelling circumstances establishing eligibility for compassionate release, as discussed below, Chee has failed to show that he would not be a danger to his community upon release, and the Court therefore denies Chee's motion.

### C. Potential Danger to the Community

"Even where extraordinary and compelling reasons exist, compassionate release may not be granted where the defendant is a 'danger to the safety of any other person or to the community.'" *United States v. Capito*, No. CR-10-08050-001-PCT-MTL, 2020 WL 5846608, at *5 (D. Ariz. Oct. 1, 2020) (citing U.S.S.G. § 1B1.13(2)). The defendant bears the burden of demonstrating that he poses no danger to the community upon release. *Magana-Lopez*, 2020 WL 6827766, at *4. Chee has not carried this burden.

First, Chee has a history of disregard for the law and serious violent crimes, particularly towards women. In 1965, Chee was convicted of shooting with a .22 caliber rifle a woman while she slept. (Doc. 71 at 17). In 1969, Chee was convicted of attacking a woman with a knife with the intent to sexually assault her. (*Id.* at 7). In 1974, Chee pled

guilty to beating a woman to death with a metal pole. (*Id.* at 3).

Chee objects to the Court's consideration of presentence reports from any of his prior offenses because they are inherently unreliable. (Doc. 72 at 6–8). Specifically, Chee notes that the 1965 report states that Chee was interviewed without an interpreter (Doc. 71 at 20), the 1969 report includes a racial stereotype—referring to him as a "typical Reservation Indian" (*id.* at 15), and the 1975 report adopts the views of the 1969 report (*id.* at 4). The Court does not find that striking the presentence reports in their entirety is appropriate. Although Chee argues broadly that "everything in the report" in unreliable, Chee does not dispute the factual descriptions of the underlying crimes to which he pled guilty or was convicted by a jury. (Doc. 72 at 7). Accordingly, the Court will disregard any opinions, comments, or evaluations of the drafters, as well as statements of Chee and his victims, but in evaluating the potential danger Chee poses to his community, the Court does not find it appropriate to ignore Chee's prior criminal conduct entirely. *See* U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g), which requires a court to consider "the history and characteristics of the person," including "criminal history"). Moreover, even if the Court was limited to considering only the facts of the crime that led to Chee's present incarceration, the Court finds that the particular heinousness of that crime itself demonstrates that Chee is a danger to his community and would nonetheless deny relief.

Chee's primary argument is that his age and medical state make him less likely to reoffend. (Doc. 64 at 21; Doc. 72 at 4–5). The Court, however, agrees with the government that "it does not take a young or physically strong man to fire a gun or light a match." (Doc. 67 at 10). Nor does it take a young or physically strong man to harm a minor. And contrary to Chee's argument, his release plan does nothing mitigate this risk. The plan suggests that Chee will live alone in his late mother's home with his sister checking in on him daily until she can make arrangements for Chee to move to an assisted living facility. (Doc. 64 at 25). But nothing in the record before the Court suggests—and nothing in Chee's past indicates—that Chee would abide by any terms of release if he was permitted to live alone.

Chee also notes that "courts have repeatedly released people on compassionate

release even when the underlying offense involved the use of a firearm and violence, and/or the defendant had prior offenses." (Doc. 72 at 8). But Courts make compassionate release determinations based on the specific facts of individual cases, and on the facts of this case, Chee has failed to show that he would not again become a danger to his community upon release.

Further, the cases Chee cites are distinguishable. In the one case involving a murder, the defendant was functionally incapacitated and was released to his family's care. *See United States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504, at *3 (E.D.N.Y. July 30, 2019) (defendant was so "frail" that he "require[d] a walker and [could] barely eat on his own"). Unlike the instant case, *Wong Chi Fai* did not involve a defendant with a history of harming his family members. And notably, although the remaining cases Chee cites "involve" violence or weapons on some level, none of the courts in those cases granted compassionate release to someone incarcerated for a gruesome murder. *See United States v. Williams*, No. 3:04CR95/MCR, 2020 WL 1751545, at *1 (N.D. Fla. Apr. 1, 2020) (defendant convicted of "armed bank robbery, one count of brandishing a firearm during a crime of violence, and one count of possessing a firearm as a convicted felon"); *United States v. Scott*, No. 7:98-CR-79-BO, at 1 (E.D.N.C. Feb. 4, 2020), ECF No. 317 (defendant convicted of "distribution of cocaine and cocaine base, Hobbs Act robbery, and using and carrying firearms during and in relation to crimes of violence"); *United States v. Peterson*, No. 7:12-CR-15-1BO, at 1 (E.D.N.C. June 4, 2019), ECF No. 63 (defendant pleaded guilty to "possession with intent to distribute a quantity of cocaine base and discharging a firearm in furtherance of a drug trafficking offense"); *United States v. Brown*, No. 2:18-CR-360 KOB-JEO (001), 2020 WL 5201224, at *2 (N.D. Ala. May 22, 2020) (defendant convicted of "use of firearm in connection with drug trafficking"); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020) (defendant convicted of "charges related to the filing of a false tax return and the possession and distribution of cocaine"); *United States v. Pena*, 459 F. Supp. 3d 544, 552 (S.D.N.Y. 2020) (defendant "pleaded guilty to committing Hobbs Act robbery"); *United States v. McCarthy*, 453 F. Supp. 3d 520, 523 (D. Conn. 2020)

(defendant pleaded guilty "one count of armed bank robbery"); *United States v. Almontes*, No. 3:05-CR-58 (SRU), 2020 WL 1812713, at *1 (D. Conn. Apr. 9, 2020) (defendant pleaded guilty to "(1) Conspiracy to Possess with Intent to Distribute and to Distribute 500 Grams or More of Cocaine . . . and (2) Possession of a Firearm in Furtherance of a Drug Trafficking Offense"); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 394 (E.D. Pa. 2020) (defendant convicted of "drug distribution and unlawful firearm possession").

Accordingly, the Court finds that despite Chee's physical ailments and increased risk of serious medical consequences should he contract COVID-19, Chee has failed to carry his burden to show he would not be a danger to the community upon release.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Chee's Motion for Compassionate Release (Doc. 64) is **DENIED**.

Dated this 7th day of January, 2021.

James A. Teilborg
Senior United States District Judge