**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-82-00116-PHX-JAT |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Sammie Bicenti Chee, | |
| Defendant. | |

Pending before the Court is Defendant Sammie Bicenti Chee's Motion for Compassionate Release. (Doc. 64). The Court previously denied the motion (Doc. 73), and Chee appealed (Doc. 74). The Ninth Circuit vacated this Court's decision and remanded the case for reassessment in light of its intervening opinion in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). (Doc. 85-1). Having considered Chee's motion and the parties' supplemental briefing (Docs. 88, 89) under the standard set forth in *Aruda*, the Court will again deny the motion.

**I.     BACKGROUND**

The Court previously discussed the facts that led to Chee's present incarceration:

> During the early morning hours of March 10, 1982, [Chee] attacked his aunt, Cora McCabe, 71; his niece, [the underage victim], 14; and Elsie McCabe, 75 in the Granado-area residence in which they all resided.
>
> [Chee] had previously been sentenced in the United States District Court on October 29, 1974 to ten years imprisonment for voluntary manslaughter and was mandatorily released from prison on June 12, 1980, with a supervision date of January 13, 1984. Upon release, [Chee] lived with his aunt,

Cora McCabe, and herded sheep for her. At approximately 3:00 a.m. on March 10, 1982, [the underage victim] was sleeping when she felt something hit her on the head. She awoke and saw [Chee] standing beside her bed. [The underage victim] recalled that [Chee] then went toward his own bed. [The underage victim] stated that Cora McCabe was lying on her bed and appeared to be sleeping. [The underage victim] further stated that [Chee] then hit Cora with a double-bladed axe and then hit [the underage victim] twice on the top of the head. [The underage victim] screamed and [Chee] ran out of the house. [The underage victim] and Elsie locked the door after [Chee] ran outside. They tried to arouse Cora and noticed blood on her head. Elsie stated that she had been awakened by [the underage victim's] screaming. When Elsie and [the underage victim] tried to move Cora, she would only moan. Elsie then built a fire in the stove so they could see.

[The underage victim] peered out the window and saw a fire near the sheep corral. While trying to clean the blood from her own head, [the underage victim] observed [Chee] walking toward the house carrying a small can. He then set the house on fire. Thereafter, Elsie opened the front door and [Chee] threw fuel on Elsie which ignited. Elsie fell to the bed and [the underage victim] extinguished the fire with a blanket. [Chee], who had entered the house, then grabbed the double-bladed axe and threw it under the bed.

Elsie and [the underage victim] then ran out of the house and tried to extinguish the residential fire. [Chee] also ran out of the house and grabbed [the underage victim] as she tried to stop the fire. [Chee] had also grabbed a shovel and tried to use it to hit [the underage victim] in the head. [Chee] then dragged [the underage victim] to nearby trees and forced to her to commit fellatio and then violently raped [the] 14-year-old [underage victim]. [Chee] told [the underage victim] that he wanted to kill Elsie and Cora and keep [the underage victim] and have a baby with her. [The underage victim] and [Chee] subsequently returned to the burning house and dragged the mattress upon which Cora was lying outside. Cora was bleeding from the head. [Chee] then re-entered the burning house and [the underage victim] ran away. Elsie had already fled to a neighbor's house. Shortly thereafter, . . . [the underage victim's] father, arrived and found the house completely burned to the ground and Cora's body on fire. [Chee] had already fled the scene.

According to the New Mexico medical investigator, Cora McCabe died of cranial cerebral injuries caused by trauma to the head. She also suffered third degree burns over 90% of her body and first and second degree burns over the remaining 10% of her body. Elsie McCabe suffered serious burns to her face, upper chest, and upper left arm. [The underage victim] suffered a fractured clavicle and two skull fractures, one of which was a depressed fracture which was corrected by surgery. The Federal Bureau of Investigation ("FBI") arrested [Chee] later that morning.

> On March 22, 1982, a federal grand jury in the District of Arizona indicted [Chee] charging him as follows: Count I - First Degree Murder of Cora McCabe; Count II - Assault of [the underage victim] with an axe with intent to Murder; Count III - assault of [the underage victim] resulting in serious bodily injury; Count IV - Forcible Rape of [the underage victim]; Count V - Assault of Elsie McCabe with intent to Murder; Count VI - Assault of Elsie McCabe resulting in serious bodily injury; and Count VII - Arson of an Occupied Dwelling.
>
> . . .
>
> On September 7, 1982, [Chee] pleaded guilty to second degree murder, a lessor included offense of Count I, First Degree Murder. On October 4, 1982, the District Court sentenced [Chee] to no less than thirty nor more then 90 years imprisonment pursuant to 18 U.S.C. § 4205(b)(l) which would restrict the parole commission's ability to parole him in ten years. [Chee]'s sentence was imposed following discussion between defense counsel and the court as to whether [Chee]'s sentence was pursuant to 4205(b)(l) or 4205(b)(2). The court recommended the [Chee] not be paroled.

(Doc. 42; *see also* Doc. 51 (adopting Doc. 42)).

Chee has been incarcerated for this offense for over 38 years and now moves for compassionate release. (Doc. 64). Chee is 86 years old and has high cholesterol, high triglicerides, and high glucose. (Doc. 66 at 90). He also has a history of tuberculosis, several ocular issues that negatively impact his vision, an enlarged prostate, arthritis, psoriasis, and Chee asserts that his bloodwork "seems to indicate that he is diabetic." (Doc. 64 at 1–2; Doc. 88 at 4). Chee argues that due to his advanced age, medical conditions, and the conditions in the prison, the Court should grant compassionate release.

## II. LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). Compassionate release is an exception to this general rule, allowing a court to reduce a term of imprisonment if a defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1). "Section 3582(c) previously provided for compassionate release only upon motion of the [Bureau of Prisons (BOP)] Director." *United States v. Partida*, No. CR 17-08260-001-PCT-DGC, 2020 WL 3050705, at *1 (D. Ariz. June 8, 2020). Now, after the enactment of the First Step Act of 2018, a defendant may bring such a motion under

§ 3582(c) after first exhausting administrative remedies with the BOP. *See id.* at *2; *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *1 (D. Ariz. June 27, 2019). "[A] district court must enforce the administrative exhaustion requirement articulated in 18 U.S.C. § 3582(c)(1)(A) when the government properly invokes the requirement." *United States v. Keller*, No. 20-50247, 2021 WL 2695129 (9th Cir. July 1, 2021).

For a court to grant compassionate release it must find that "extraordinary and compelling reasons warrant" a reduction in sentence "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). "[T]he Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant," but "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *Aruda*, 993 F.3d at 802.

One such informative policy statement is U.S.S.G. § 1B1.13(2), which provides that a court may consider whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[1]

Section 3582(c) also requires a court to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable" when analyzing a motion for compassionate release. The § 3553(a) factors include:

> [T]he nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims.

*United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (citing 18 U.S.C. § 3553(a)). To grant compassionate release, a court must find both an extraordinary and compelling reason for compassionate release and that the § 3553(a) factors warrant compassionate

---

[1] In its prior Order, the Court treated U.S.S.G. § 1B1.13(2) as binding rather than informative.

- 4 -

release. *See Magana-Lopez*, 2020 WL 3574604, at *2–5 (considering extraordinary and compelling reasons and § 3553(a) factors separately); *United States v. Platt*, No. CR 18-195-WJM, 2020 WL 3839847, at *3 (D. Colo. July 8, 2020) (same). "[A]lthough a district court must perform this sequential inquiry before it *grants* compassionate release, a district court that properly *denies* compassionate release need not evaluate each step." *Keller*, 2021 WL 2695129, at *5.

## III. DISCUSSION

### A. Administrative Exhaustion

Here, Chee and the government agree that Chee met 18 U.S.C. § 3582(c)(1)(A)'s administrative exhaustion requirements by requesting a sentence reduction with the prison, which the warden subsequently denied. (Doc. 53 at 2; Doc. 64 at 11–12; Doc. 67 at 5).

### B. Extraordinary and Compelling Circumstances

Regarding extraordinary and compelling circumstances, Chee and the government disagree as to the severity of Chee's current medical condition. The Court, however, need not resolve this disagreement. Even assuming Chee has shown extraordinary and compelling circumstances establishing eligibility for compassionate release, the § 3553(a) factors weigh against compassionate release, and the Court will therefore deny Chee's motion. *See Keller*, 2021 WL 2695129, at *5.

### C. Section 3553(a) Factors

Because the § 3553(a) factors strongly weigh against compassionate release, the Court denies Chee's motion.

Considering the "nature and circumstances of the offense," the heinousness of the crime for which Chee is presently incarcerated is difficult to overstate. *See* 18 U.S.C. § 3553(a)(1). Chee engaged in a series of cruel and violent acts against vulnerable victims, and this weighs against compassionate release.

Further weighing against compassionate release are the "history and characteristics of the defendant." *See id.* As the Court previously noted, Chee has a history of disregard for the law and serious violent crimes, particularly towards women. In 1965, Chee was

convicted of using a .22 caliber rifle to shoot a woman while she slept. (Doc. 71 at 17). In 1969, Chee was convicted of attacking a woman with a knife with the intent to sexually assault her. (*Id.* at 7). In 1974, Chee pled guilty to beating a woman to death with a metal pole. (*Id.* at 3). This serious criminal history weighs strongly against relief.[2]

Also, the Court does not find that reducing Chee's sentence would "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2)(A). Chee notes that he has been incarcerated for over 38 years, which is more than the minimum of the Court's 30–90-year sentence imposed in 1982. Although 38 years is certainly a long period of time, the Court does not find that a sentence towards the lower end of the sentencing range appropriate given the gruesome and cruel nature of Chee's crime.

Chee also notes that "courts have repeatedly released people on compassionate release even when the underlying offense involved the use of a firearm and violence, and/or the defendant had prior offenses." (Doc. 72 at 8). But the cases Chee cites are distinguishable. In the one case involving a murder, the defendant was functionally incapacitated and was released to his family's care. *See United States v. Wong Chi Fai*, No. 93-CR-1340 (RJD), 2019 WL 3428504, at *3 (E.D.N.Y. July 30, 2019) (defendant was so "frail" that he "require[d] a walker and [could] barely eat on his own"). More fundamentally, *Wong Chi Fai* did not involve a defendant who took an axe to someone's head or set another human being on fire.

---

[2] Chee objects to the Court's consideration of presentence reports from any of his prior offenses, arguing that they are inherently unreliable. (Doc. 72 at 6–8). Specifically, Chee notes that the 1965 report states that Chee was interviewed without an interpreter (Doc. 71 at 20), the 1969 report includes a racial stereotype—referring to him as a "typical Reservation Indian" (*id.* at 15), and the 1975 report adopts the views of the 1969 report (*id.* at 4). The Court does not find that striking the presentence reports in their entirety is appropriate. Although Chee argues broadly that "everything in the report" in unreliable, Chee does not dispute the factual descriptions of the underlying crimes to which he pled guilty or was convicted by a jury. (Doc. 72 at 7). Accordingly, the Court will disregard any opinions, comments, or evaluations of the drafters, as well as statements of Chee and his victims, but the Court does not find it appropriate to ignore Chee's prior criminal conduct entirely given that a defendant's history is an explicit consideration in § 3553(a)(1). Moreover, even if the Court could not consider Chee's criminal history in its exercise of discretion, the Court would nonetheless deny relief based on the remaining § 3553(a) factors.

And notably, although the remaining cases Chee cites "involve" violence or weapons on some level, none of the courts in those cases granted compassionate release to someone incarcerated for a gruesome murder. *See United States v. Williams*, No. 3:04CR95/MCR, 2020 WL 1751545, at *1 (N.D. Fla. Apr. 1, 2020) (defendant convicted of "armed bank robbery, one count of brandishing a firearm during a crime of violence, and one count of possessing a firearm as a convicted felon"); *United States v. Scott*, No. 7:98-CR-79-BO, at 1 (E.D.N.C. Feb. 4, 2020), ECF No. 317 (defendant convicted of "distribution of cocaine and cocaine base, Hobbs Act robbery, and using and carrying firearms during and in relation to crimes of violence"); *United States v. Peterson*, No. 7:12-CR-15-1BO, at 1 (E.D.N.C. June 4, 2019), ECF No. 63 (defendant pleaded guilty to "possession with intent to distribute a quantity of cocaine base and discharging a firearm in furtherance of a drug trafficking offense"); *United States v. Brown*, No. 2:18-CR-360 KOB-JEO (001), 2020 WL 5201224, at *2 (N.D. Ala. May 22, 2020) (defendant convicted of "use of firearm in connection with drug trafficking"); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020) (defendant convicted of "charges related to the filing of a false tax return and the possession and distribution of cocaine"); *United States v. Pena*, 459 F. Supp. 3d 544, 552 (S.D.N.Y. 2020) (defendant "pleaded guilty to committing Hobbs Act robbery"); *United States v. McCarthy*, 453 F. Supp. 3d 520, 523 (D. Conn. 2020) (defendant pleaded guilty "one count of armed bank robbery"); *United States v. Almontes*, No. 3:05-CR-58 (SRU), 2020 WL 1812713, at *1 (D. Conn. Apr. 9, 2020) (defendant pleaded guilty to "(1) Conspiracy to Possess with Intent to Distribute and to Distribute 500 Grams or More of Cocaine . . . and (2) Possession of a Firearm in Furtherance of a Drug Trafficking Offense"); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 394 (E.D. Pa. 2020) (defendant convicted of "drug distribution and unlawful firearm possession").

Finally, Defendant suggests that "this Court should reduce Mr. Chee's sentence to time served" "[a]s an act of humanitarian mercy." (Doc. 88 at 5). But humanitarian mercy is not a luxury that Chee afforded his many victims, in this case or in the past. The Court considered that fact and the remaining § 3553(a) factors in determining Chee's sentence,

and considering these factors anew, the Court does not find that a reduction to Chee's sentence is appropriate.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Chee's Motion for Compassionate Release (Doc. 64) is **DENIED**.

**IT IS FURTHER ORDERED** that Chee's Motion for Extension of Time (Doc. 87) is **DENIED AS MOOT**.

Dated this 9th day of July, 2021.

James A. Teilborg
Senior United States District Judge